**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **v.** ) | |
| ) **CASE NO. 5:22-cr-40 (MTT)** | |
| **KIMDRA WILKERSON** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## ORDER

A jury found defendant Kimdra Wilkerson guilty of conspiring to possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846. Doc. 257. To determine whether Wilkerson's sentence should be enhanced, the verdict form asked if the Government had proved specific drug types and quantities. *Id*. The jury found that the Government had not. *Id*. Wilkerson argues that the jury's verdict was inconsistent. Doc. 264. She, in effect, argues that the tail—the § 841(b) penalty provisions for a § 846 conviction—must wag the dog—the jury's guilty verdict. For the following reasons, the Court rejects that argument and Wilkerson's Federal Rule of Criminal Procedure 29 motion is **DENIED**.

### I. BACKGROUND

In count one of the indictment, the Government charged that Wilkerson, along with eleven other defendants,

knowingly and intentionally conspired and agreed together and with each other, and other persons both known and unknown to the Grand Jury, to commit the following offenses against the United States, to possess with intent to distribute and to distribute controlled substances, to wit: 50 grams or more of methamphetamine, a Schedule II controlled substance; 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; a mixture or substance

> containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance; and a mixture or substance containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, also known as fentanyl, in an amount of four hundred (400) grams or more; All in violation of Title 21 United States Code, Section 846, in connection with Title 21, United States Code, Section 841(a)(1), Section 841(b)(1)(A)(viii), Section 841(b)(1)(B)(ii)(II), Section 841(b)(1)(C), and Section 841(b)(1)(A)(vi).

Doc. 1 at 1-2.  Wilkerson, unlike her codefendants, was not charged with a substantive offense, presumably because there was no evidence Wilkerson personally distributed drugs.  *Id*. at 3-9.  Wilkerson's codefendants all pled guilty.  Docs. 187; 208; 210; 212; 224; 226; 230; 235; 240; 334.

At trial, the Government introduced evidence that Wilkerson drove Damon Hayes, the leader of the drug trafficking organization, to Atlanta for the purpose of picking up large quantities of drugs from his supplier, Lagary Williams.  Because law enforcement agents did not "take down" Hayes' drug trafficking organization until after Wilkerson's drug runs with Hayes, no drugs were seized on those occasions.  On September 10, 2021, law enforcement agents executed search warrants on Williams' Atlanta apartment, Hayes' "money house," and one of the drug trafficking organization's "stash" houses and seized large quantities of drugs.  Wilkerson and the Government stipulated to the type and quantity of drugs seized.  Doc. 247.

In its charge, the Court, using the Eleventh Circuit's pattern jury instruction, instructed the jury that

> The Defendant can be found guilty only if all the following facts are proved beyond a reasonable doubt:
>
> 1. two or more people in some way agreed to try to accomplish a shared and unlawful plan, the object of which was to possess with the intent to distribute a controlled substance; and

2. the Defendant knew the unlawful purpose of the plan and willfully joined in it.

…

The Government does not have to prove the Defendant knew what controlled substance was involved in the conspiracy, only that she knew it involved a controlled substance.

…

The indictment charges a conspiracy to possess with intent to distribute at least 50 grams of methamphetamine, 500 grams of cocaine, cocaine base, and 400 grams of fentanyl.  You may find the Defendant guilty of the crime even if the amount of the controlled substances for which she should be held responsible is less than these amounts.  So if you find the Defendant guilty, you must also find whether the Government has proved beyond a reasonable doubt the weight of the controlled substances the Defendant conspired to possess and specify the amount on the verdict form.

Doc. 255 at 7-8.

The Court provided the jury a verdict form with the following two questions:

1.  As to **Count One**, we, the jury find the Defendant **Kimdra Wilkerson**:

_____ Not Guilty                        _____ Guilty

If you find the Defendant not guilty as charged in **Count One**, you need not consider paragraph 2 below.

2.  We, the Jury, having found the Defendant **Kimdra Wilkerson** guilty of the offense charged in **Count One**, further find with respect to that Count that she conspired to possess with intent to distribute the following controlled substance(s) in the amount shown (place an "X" in the appropriate box). Consider each type of controlled substance separately:

Methamphetamine:
(i)  Weighing 50 grams or more        ☐
(ii)  Weighing 5 grams or more         ☐
(iii) Weighing less than 5 grams       ☐

Cocaine:
(i)  Weighing 500 grams or more       ☐
(ii)  Weighing less than 500 grams     ☐

Cocaine Base:
    (i)  Weighing 280 grams or more   ☐
    (ii)  Weighing 28 grams or more   ☐
    (iii) Weighing less than 28 grams   ☐

Fentanyl:
    (i)  Weighing 400 grams or more   ☐
    (ii)  Weighing 40 grams or more   ☐
    (iii) Weighing less than 40 grams   ☐

Doc. 257 (emphasis in original).

While deliberating, the jury had two questions.  Doc. 256.

First, the jury asked: "Can the jury not select a choice for Question two on the verdict form if we select guilty?"  *Id*. at 1.  The Court conferred with the parties and, with their consent, provided the jury with a revised verdict form which added "none of the above" as an option under each type of drug.  Doc. 257.  The Court reminded the jury of its instructions as to the Government's burden of proof.

Second, the jury asked:

Did the defendant have to sign and agree to the document titled stipulation of facts?

Was there an option not to sign it?

By her signing the paper (stipulation of the facts) did Kimbra [sic] agree to the amounts of drugs?

What would have happened if she did not sign the stipulation of the facts document?

What does stipulate mean?

Please explain this phrase – hereby agree and stipulate to the following facts, which may be entered into the record at trial as if proven by competent evidence, without further proof being offered.

*Id.* at 2.  The Court informed the jury that Wilkerson "voluntarily agreed that the drugs identified in the stipulation were recovered on September 10, 2021."  It further informed the jury that "the purpose of this stipulation was to avoid the time and expense of calling as witnesses the chemists who actually tested the drug … By agreeing to this stipulation, the defendant, Ms. Wilkerson, did not admit to any association with the drug."

The jury returned a verdict convicting Wilkerson of conspiracy to possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846.  Doc. 257 at 1.  In response to the drug type and quantity questions, the jury answered "none of the above" to each question.  *Id.* at 1-2.

Once the jury was dismissed, the Court ordered the parties to submit briefs addressing the legal consequences of the verdict.  Doc. 254 at 2.  After the parties filed briefs on the issue, the Court held a status conference on August 31, 2023, and ordered the parties to supplement their briefs.  Docs. 263; 264; 269.  Only the Government filed a supplemental brief.  Doc. 270.

## II. DISCUSSION

For the following reasons, the jury's verdict stands.

### A. 21 U.S.C. §§ 841 and 846

The Government indicted Wilkerson and her codefendants for conspiring to possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846, which provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  Doc.

1 at 1-2.  21 U.S.C. § 841(a)(1) provides: "[I]t shall be unlawful for any person knowingly or intentionally … to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

The indictment then turned to the penalties for the alleged conspirators.  Doc. 1 at 2.  Specifically, the indictment charged that the conspirators violated § 846 "in connection with" 21 U.S.C. §§ 841(b)(1)(A)(vi), 841(b)(1)(A)(viii), 841(b)(1)(B)(ii)(II), and 841(b)(1)(C).  *Id.* at 2.  Section 841(b)(1)(C) provides the base penalty, and §§ 841(b)(1)(A)(vi), 841(b)(1)(A)(viii), and 841(b)(1)(B)(ii)(II) provide enhanced penalties based upon the type and quantity of drugs involved in the conspiracy.

The plain language of § 841, § 846, and the indictment make clear that drug type and quantity are relevant only for penalty purposes.  Specifically, § 846 is the conspiracy offense, § 841(a)(1), which is titled "Unlawful acts," is the substantive offense, and § 841(b)(1), titled "Penalties," provides various potential penalties for a violation of either § 841(a)(1) or § 846.  Neither § 841(a)(1) nor § 846 require proof of a specific drug.  Rather, the indictment alleged the drugs involved in the conspiracy "so that the government could seek enhanced penalties based on the drug type and amount."  *United States v. Colston*, 4 F.4th 1179, 1189 (11th Cir. 2021).

The elements of a § 846 conspiracy offense follow the plain text of the statutory scheme.  "To convict a defendant under § 846 for conspiracy to possess with intent to distribute a controlled substance in violation of § 841(a)(1), the government needs to prove beyond a reasonable doubt that (1) there was an agreement between two or more people to violate § 841(a)(1); (2) the defendant knew about the agreement; and (3) the defendant voluntarily joined the agreement."  *Colston*, 4 F.4th at 1187.  Because

§ 846 does not "require knowledge of the specific substance," the Government does not have to prove drug type or quantity for a jury to convict a defendant under § 846.  *Id.* at 1188.  Rather, again, drug type and quantity are relevant only for penalty purposes and § 841(b)(1) "provides the *penalties* for violations of § 841(a)(1) and § 846—and some of those *penalties* do depend on the substance, and also on its quantity."  *Id.* (emphasis added).

Moreover, to establish a § 846 violation, the Government is not required to prove any overt act on the part of the defendant, although here it did.  *United States v. Shabani*, 513 U.S. 10, 14-17 (1994).  This means the Government could prove a § 846 violation solely based on a defendant's knowing and voluntary agreement with another individual to distribute drugs, without any proof that those drugs even existed.  *See id.* at 13-14 ("We have consistently held that the common law understanding of conspiracy 'does not make the doing of any act other than the act of conspiring a condition of liability.'") (quoting *Nash v. United States*, 229 U.S. 373, 378 (1913)).

In sum, based on the statutory scheme of § 841 and the elements of a § 846 offense, proof of specific drug type and quantity is not necessary to support a § 846 conviction.

**B. *Apprendi* and *Alleyne***

In *Apprendi v. New Jersey* and *Alleyne v. United States*, the Supreme Court held that if a fact increases the statutory minimum or maximum penalty of an offense, the United States Constitution requires that a jury—not a judge—must find that fact proven beyond a reasonable doubt.  530 U.S. 466 (2000); 570 U.S. 99 (2013).

In *Apprendi*, the lower court increased the defendant's hate crime sentence above the statutory maximum based on a judicial finding that racial bias motivated the defendant, an enhancement permitted by state statute for certain crimes.  530 U.S. at 469-71.  The state supreme court affirmed the defendant's sentence and the Supreme Court granted certiorari on the issue of whether "the United States Constitution require[d] that the finding of bias upon which [the defendant's] hate crime sentence was based must [have been] prove[n] to a jury beyond a reasonable doubt."  *Id*. at 471-74.  The Supreme Court held that it did, stating, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id*. at 490.  In its decision, the Court noted "the constitutionally novel and elusive distinction between 'elements' and 'sentencing factors.'"  *Id*. at 494.  It further stated: "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"  *Id*.

Thirteen years later, the Supreme Court decided *Alleyne*, overruling *Harris v. United States*, 536 U.S. 545 (2002).  In *Harris*, the Supreme Court held that while juries must find facts that increase a penalty beyond the statutory maximum, *Apprendi* did not require juries to find facts that increase the statutory *minimum*.  536 U.S. at 567.  In *Alleyne*, the Supreme Court held "that this distinction is inconsistent with … *Apprendi*," and just as facts that increase a statutory maximum sentence must be submitted to the jury, so must facts that increase a statutory minimum sentence.  570 U.S. at 103, 108.

Accordingly, under *Apprendi* and *Alleyne*, when the Government seeks an enhanced penalty based on a particular fact, the fact upon which the enhancement is

based becomes an "element" or an "ingredient."  *See* 530 U.S. at 494; 570 U.S. at 107-08.  When explaining what is required in this situation, some decisions speak of new "aggravated" offenses.  *See*, *e.g.*, *Alleyne*, 570 U.S. at 113 ("This reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury."); *Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt.").  But regardless of whether one characterizes a fact necessary to enhance a penalty as an "ingredient," "element," or "like an element,"[1] or whether one labels an enhanced penalty as a new "aggravated offense," the context must be remembered.  These characterizations, as the Eleventh Circuit made clear in *Colston*, are efforts to comply with *Apprendi* and *Alleyne* and that is all they are.  4 F. 4th at 1188.

Whatever labels are used as courts apply the *Apprendi/Alleyne* construct, neither case and none of their progeny rewrote the criminal code.  The plain text of § 841 and § 846 have not changed, and the elements of those offenses have not changed.  *See Colston*, 4 F.4th at 1187-89; *United States v. Taylor*, 982 F.3d 1295, 1300 (11th Cir. 2020) (internal citations omitted) ("[P]articipation in a single drug-trafficking conspiracy constitutes a single offense, for which the defendant can receive only one sentence. But each drug-quantity element triggers corresponding statutory penalties, regardless of whether the offense includes one drug-quantity element or several."), *abrogated on*

---

[1] *United States v. Sanchez*, 269 F.3d 1250, 1299 (11th Cir. 2001) (Tjoflat, J., concurring), *abrogated on other grounds by Alleyne*, 570 U.S. 99.

*other grounds by Concepcion v. United States*, __ U.S. __ 142 S. Ct. 2389, 2396 (2022).

Given that the question of whether Wilkerson's penalty should be enhanced was submitted to the jury, why, then, are we concerned with *Apprendi* and *Alleyne*? Because of the temptation to apply the *Apprendi/Alleyne* "construct" outside of its penalty-enhancement boundaries.  It is understandable that defendants would seize any opportunity to heighten or complicate the Government's burden of proof,[2] but here the Government seems to agree and reads the progeny of *Apprendi* and *Alleyne* to hold that "§ 841 sets forth a single base offense and five aggravated offenses."  Doc. 270 at 2.  Putting aside the question of whether courts can indeed create new criminal offenses, the Government's reading strays outside the bounds of the *Apprendi/Alleyne* construct.  Again, *Apprendi* and *Alleyne* only hold that juries must find facts that increase minimum and maximum penalties.  If the *Apprendi/Alleyne* construct indeed operated the way the Government seems to suggest, it would create hundreds of "aggravated offenses."  *See Sanchez*, 269 F.3d at 1265 n.24 ("One estimate is that if the factors in § 841(b) are treated as elements of an offense for constitutional purposes, and not sentencing factors as clearly enacted by Congress, then this analysis results in approximately 350 different offenses based on these factors.").

And if drug type and quantity was an element in every sense rather than an element that must be proved to enhance penalties, the Government arguably would be

---

[2] *Colston* put to rest a defendant's argument that alleging a specific drug to enhance a sentence somehow changed the elements of a § 846 offense.  4 F.4th at 1189.  Wilkerson essentially makes the same argument—because the indictment identified drugs to enhance penalties and the jury found the Government had not proved specific drugs, she says she cannot be convicted of a § 846 offense. *Colston* made clear that § 846 and the penalties found in § 841(b) present entirely separate issues, and that an indictment seeking enhanced penalties does not change the elements of a § 846 offense.  4 F.4th at 1187-89.

strictly bound by its indictment.  *Colston* rejected such "hyper-technical parsing" of indictments.  4 F.4th at 1189.  But yet, the Government's approach encourages exactly that.  Consider this: the Government charges a § 841(a)(1) offense and further alleges that over fifty grams of methamphetamine were involved to invoke a § 841(b)(1)(A)(viii) enhancement but does not invoke a § 841(b)(1)(C) base penalty "violation."  If the jury found the Government did not prove the "element" of fifty grams of methamphetamine, a defendant could argue that she must be acquitted.[3]  This is because, according to the Government's interpretation, the indictment charged only a § 841(b)(1)(A)(viii) "offense" and failed to prove an "element" of that offense, i.e., drug quantity.

Here is a starker example of the consequences of the Government's reading.  A § 846 conspiracy indictment alleges the same enhanced penalty but not a § 841(b)(1)(C) base penalty violation.  Beyond any doubt, drug quantity or even the existence of a drug is not an element of a § 846 offense.  But because the Government alleged a drug quantity to seek an enhanced penalty and did not prove that quantity, then the defendant would argue she must be acquitted.[4]  Perhaps the Government, in defense of its reading of *Apprendi* and *Alleyne*, would argue that the defendants in these examples could be guilty of the "lesser included offense" of a § 841(b)(1)(C) "violation."  That only illustrates the awkwardness of applying the *Apprendi/Alleyne* construct outside its boundaries.  Instead of simply asking the jury to determine whether a penalty should be enhanced, we must now, the Government seems to say, instruct the jury on the elements of the "charged" offense and lesser included offenses.  Note

---

[3] The Court has rejected this argument in previous cases.

[4] This, essentially, is the argument the Eleventh Circuit rejected in *Colston*.  4 F.4th at 1187-89.

the plural—"offenses." If the indictment alleged the "maximum offense" (§ 841(b)(1)(A)(viii)), the jury must be instructed on the lesser included "offenses" down the enhancement ladder all the way to the base penalty.

The simple point is this. *Apprendi* and *Alleyne* only require the jury to find facts that enhance minimum and maximum penalties. Within the boundaries of *Apprendi* and *Alleyne*, those facts are "elements." But *Apprendi* and *Alleyne* did not legislate new offenses and lesser included offenses. The Eleventh Circuit's pattern jury instruction correctly instructs the jury that they can convict even if the Government did not prove the drugs alleged in the indictment for the purpose of enhancing the penalty for the charged offense.

**C. The Jury's Verdict**

Here, the indictment alleged all the defendants, including Wilkerson, conspired to violate § 841(a)(1). Doc. 1 at 1-2. And in that conspiracy count, the indictment alleged the defendants were subject to the base penalty, § 841(b)(1)(C). *Id.* at 2. The indictment also alleged facts that if proved, would allow for an enhanced penalty. *Id.* For some of those defendants, the Government did prove facts that subjected them to enhanced penalties—Hayes, for example, was sentenced to 275 months. Doc. 350. For Wilkerson, the jury found that the Government proved the elements necessary to convict her of conspiracy, but not the facts that would allow a penalty above the base penalty alleged in the indictment. Doc. 257 at 1-2. Clearly, the Government could not prove the type or quantity of drugs involved in Wilkerson's drug runs because no drugs were then seized.[5] But that only means the Government failed to convince the jury that

---

[5] Curiously, though, the Government, in its argument to the jury, made no effort to provide the jury with a basis for attributing to Wilkerson, as a member of the conspiracy, any drug quantities. *See, e.g., United*

the penalty for Wilkerson's role in the conspiracy could be enhanced.  And that, for the reasons discussed, does not invalidate her conviction.

The next question then is, what is the impact of Wilkerson's verdict?  The answer is clear: Wilkerson is guilty of a § 846 offense, she is subject to a sentence under the base penalty provision, § 841(b)(1)(C), and the Government cannot seek an enhanced penalty under § 841(b)(1)(A)(vi), § 841(b)(1)(A)(viii), or §841(b)(1)(B)(ii)(II).

Therefore, the remaining questions are (1) whether sufficient evidence supported the jury's verdict, and (2) whether an alleged inconsistency affects the verdict.

*1. Sufficiency of the Evidence*

Wilkerson does not specifically argue that the evidence was not sufficient to support her conspiracy conviction.  The Court addresses the issue nonetheless.

Under Federal Rule of Criminal Procedure 29(a), "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  "The test for reviewing the sufficiency of the evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Young*, 906 F.2d 615, 618 (11th Cir. 1990) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Williams*, 390 F.3d 1319, 1323 (11th Cir. 2004) (The relevant question is "'whether the evidence, examined in a light most favorable to the Government, was

---

States v. Alas, 196 F.3d 1250, 1251 (11th Cir. 1999) ("Under well established Eleventh Circuit precedent conspirators are liable for all of the acts and foreseeable consequences of the conspiracy.").  For sentencing purposes, "'a member of a drug conspiracy is liable for [her] own acts and the acts of others in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity.'"  *United States v. Rodriguez*, 34 F.4th 961, 970 (11th Cir. 2022) (quoting *United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir. 1993) (citing U.S.S.G. § 1B1.3(a)(1)).

sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt.'") (quoting *United States v. Greer*, 850 F.2d 1447, 1450 (11th Cir. 1988)).  "All credibility choices must be made in support of the jury's verdict."  *Williams*, 390 F.3d at 1323.  The evidence against Wilkerson, viewed in favor of the Government, was sufficient to support a guilty verdict.

The "essential elements" of Wilkerson's charged offense, § 846, are: (1) "an agreement between two or more people to violate § 841(a)(1);" (2) Wilkerson's knowledge of the agreement; and (3) that Wilkerson voluntarily joined the agreement. *Colston*, 4 F.4th at 1187.  Here, substantial evidence supporting each element was presented at trial.

 Drug Enforcement Administration ("DEA") Special Agent Tyler Vanderberg, citing intercepted communications and other evidence, testified without objection that Williams was the "source of supply" for Hayes.  The Government played wiretapped phone calls at trial tending to establish that on at least three occasions—July 12, 2021, July 30, 2021, and August 13, 2021—Wilkerson agreed to drive Hayes to Williams' apartment in Atlanta to buy drugs to bring back to Milledgeville.  Docs. 259-1; 259-2; 259-10; 259-25.  Those phone calls, in addition to other evidence, revealed the following.

On July 12, 2021, Hayes told Williams that he was going to "slide up on [him] th[at] evening" to pick up "a little nina."  Doc. 259-1.  Peach County Sheriff's Department Agent Cole testified that "nina" meant nine ounces of an illegal drug, typically cocaine. Later that day, Hayes and Wilkerson had the following conversation over the phone:

> Hayes: You wanna make some money?
> Wilkerson: And do what?

> Hayes: Man, go get, go get us some gas man.
> Wilkerson: From where?
> Hayes: From my people.
> Wilkerson: Oh, you want to go up the road?
> Hayes: Yea.
> Wilkerson: Oh, it don't matter.
> Hayes: I'm fixin to come outside now.
> Wilkerson: Alright

Doc. 259-2.  Agent Cole testified that "gas" meant marijuana and Agent Vanderberg testified that "up the road" meant Atlanta.  While in the car with Wilkerson on the way to Atlanta, Hayes told Williams over the phone that he was fifteen minutes out and Williams stated that he had "zaza" and "zips of girl," which are, respectively, slang for marijuana and an ounce of cocaine, according to Agent Cole.  Doc. 259-3.  Later that day, Wilkerson told Hayes he only paid her 100 dollars and still owed her another 100.  Docs. 259-4; 259-5.  Hayes told her he would Cashapp her the money.  Doc. 259-5.

On July 20, 2021, Hayes told Wilkerson over the phone that his wife, Flossy, stole his "Cashapp phone," his bag, a pound of marijuana, "a couple zips"—"ounces," and his necklace.  Doc. 259-6.  Wilkerson asked if Flossy "got the money" and Hayes said no.  *Id*.  Hayes expressed that he was not "mad about that weed and that little, that dope that's in that bag."  Doc. 259-7.  Wilkerson responded, "[w]ell that's on her riding around with all that shit."  *Id*.

On July 30, 2021, Hayes and Williams arranged for Hayes to come to Atlanta to pick up "jewelry," meaning "crystal methamphetamine," according to Agent Cole.  Docs. 259-8; 259-9.  Hayes then called Wilkerson and asked if she could "slide [him] to the mall."  Doc. 259-10.  Agent Vanderberg testified that "the mall" was Atlanta.  When Wilkerson said she first needed to ask her brother if he could take care of her children, Hayes said he would "give [her brother] some reefer or something" in exchange.  *Id*.

Less than twenty minutes later, Wilkerson called Hayes and asked if he was ready, and they agreed she would pick him up from the "money house" later.  Docs. 259-11; 259-12.  Agent Vanderberg testified that the "money house" was the nickname for Hayes' main distribution residence.  Agent Vanderberg further testified that he and other law enforcement conducted undercover surveillance of Wilkerson and Hayes' July 30, 2021 drive to Atlanta.  The Government introduced photos that showed Wilkerson driving Hayes to Williams' apartment, Wilkerson outside Williams' apartment complex, and Hayes entering and leaving Williams' apartment complex with a backpack, as well as a video of Hayes and Williams walking into Williams' apartment.  Docs. 259-13; 259-14; 259-15; 259-16; 259-13; 259-17; 259-18; 259-19; 259-20; 259-21; 259-22; 259-33; 259-34.

On August 13, 2021, Hayes told Wilkerson that he "need[ed] to go to the mall." Doc. 259-25.  They agreed on a time for Wilkerson to pick him up.  *Id*.  Text messages between the two showed that around 7:00 P.M. that night, Wilkerson picked Hayes up. Docs. 259-29; 259-30; 259-31.

On September 9, 2021, law enforcement executed search warrants on Hayes' "money house" and Wilams' apartment and recovered distribution-quantities of drugs and drug paraphernalia.  Docs. 259-35; 259-36; 259-37; 259-38; 259-39; 259-40; 259-41; 259-42; 259-43; 259-44; 259-45; 259-46; 259-47; 259-48; 259-49; 259-50; 259-51; 259-52; 259-53; 259-54.  Law enforcement agents found a bookbag in Hayes' home that appeared to be the one he carried into Williams' apartment on his drug runs with Wilkerson; the bookbag also contained distribution-quantities of drugs.  Docs. 259-46; 259-47.

This evidence is more than sufficient to support the jury's finding that Wilkerson knowingly and voluntarily agreed with Hayes to drive him from Milledgeville to Atlanta for the purpose of retrieving for distribution controlled substances.

*2. The jury's verdict is not inconsistent.*

Wilkerson's only specific argument for acquittal is that "the jury's verdict[] in this case cannot be reconciled." Doc. 264 at 4. The Court disagrees. Again, a defendant can be guilty of a drug conspiracy even without proof of the drugs. Because no drugs were seized when Wilkerson made her drug runs with Hayes, and because the Government made no attempt to attribute any drugs *later* seized to Wilkerson, it is understandable that the jury found the Government had not proved a specific drug or drugs. But that finding is not at all irreconcilable with the jury's finding that Wilkerson was a conspirator.

In any event, the Supreme Court and the Eleventh Circuit have been clear that any inconsistency within a jury's verdict is not subject to the Court's review. *Harris v. Rivera*, 454 U.S. 339, 345 (1981); *United States v. Powell*, 469 U.S. 57 (1984) (holding that jury verdicts are "insulated" from review based on inconsistency); *Dunn v. United States*, 284 U.S. 390, 393 (1932) ("The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."), *abrogated on other grounds by Powell*, 469 U.S. 57; *Bravo-Fernandez v. United States*, 580 U.S. 5, 13 (2016) (internal quotation marks and citation omitted)

("Although it is impossible to discern which verdict the jurors arrived at rationally … that does not show that they were not convinced of the defendant's guilt."); *United States v. Albury*, 782 F.3d 1285, 1295 (11th Cir. 2015); *United States v. Mitchell*, 146 F.3d 1338, 1344 (11th Cir. 1998) (quoting *Powell*, 469 U.S. at 68-69) ("The Supreme Court has plainly determined that jury verdicts are 'insulate[d] from review' on the ground that they are inconsistent.").  Although these cases address inconsistencies between two different counts, rather than inconsistency within one count like here, the Court finds the reasoning of those cases controlling.  Thus, even if the jury's verdict was inconsistent, that inconsistency is not for the Court to review.

Wilkerson points to three nonbinding decisions that she contends have decided this issue differently.  Doc. 264 at 2-4; *United States v. Shippley*, 690 F.3d 1192 (10th Cir. 2012); *United States v. Randolph*, 794 F.3d 602 (6th Cir. 2015); *United States v. Pierce*, 940 F.3d 817 (2d Cir. 2019).  For several reasons, none are persuasive.

First, if these cases seem to bolster Wilkerson's argument, it is only because they effectively read § 846 to require proof of drug type and quantity.  In *Shippley*, the case that drives Wilkerson's argument, the district court did that expressly, charging the jury that "it could convict only if it unanimously agreed Mr. Shippley conspired to distribute at least 50 grams of methamphetamine, 500 grams of cocaine, or any amount of ecstasy."  *Id*. at 1193.  The verdict form, however, properly separated the question of guilt and the question of drug type and quantity.  *Id*.  That led to a conflict between the jury's § 846 guilty verdict and the jury's initial inability to make a finding on drug type and quantity.  *Id*.  The Tenth Circuit, emphasizing that the parties failed to challenge the district court's instruction on the elements of a § 846 offense, addressed only the

propriety of ordering further jury deliberations in the face of irreconcilable verdicts and cautioned that its "holding is limited to the situation before" it.  *Id*. at 1193, 1196.

The two cases that followed *Shippley, Randolph* and *Pierce,* overlooked *Shippley*'s note of caution and essentially made the same mistake the district court made in *Shippley.*  Both effectively read § 846 to require proof of drug type and quantity, and thus, the verdicts in both cases were deemed "irreconcilable" because jurors could not find the defendants guilty of § 846 and at the same time find the Government failed to prove drug type and quantity.  In short, the three cases upon which Wilkerson relies were based on the mistaken belief that drug type and quantity are elements that must be proved to find a defendant guilty of a § 846 offense.

None of the three decisions relied on *Apprendi*, *Alleyne*, or their progeny to reach their conclusions, but it seems apparent that the *Apprendi/Alleyne* construct led the courts astray.  To comply with *Apprendi* and *Alleyne*, the indictments in those cases, like the indictment here, alleged drug type and quantity for the purpose of enhancing the conspirators' sentences.  Yet the district court in *Shippley* expressly, and the circuit courts in *Randolph* and *Pierce* effectively, read the indictments to require proof of drug type and quantity as an essential element of a § 846 offense.  That reading, for the reasons stated, is far outside the boundaries of the *Apprendi/Alleyne* construct.  Rather, as this Circuit has said, drug type and quantity are relevant only for penalty purposes, and alleging drug type and quantity does not change the elements of a § 846 offense. *Colston*, 4 F.4th at 1188.  There is no inconsistency between a finding of § 846 guilt and a finding that the basis for an enhanced penalty has not been proved.

Second, the indictment here alleged a conspiracy "in connection with" § 841(b)(1)(C), the base penalty provision.  Doc. 1 at 2.  Thus, even if the penalty provisions were, by some logic, elements of § 846 offenses, the indictment alleged a § 846 "base offense" as well as a § 846 "enhanced offense".  The jury's verdict simply means the Government proved the alleged base offense but not the alleged enhanced offense.

Third, the three cases distinguished Supreme Court precedent on inconsistent verdicts because the inconsistent findings were within a single count.  *Shippley*, 690 F.3d at 1195-96; *Randolph*, 794 F.3d at 611; *Pierce*, 940 F.3d at 822-23.  Perhaps the logic of that distinction would apply if a jury made inconsistent findings on the elements of a single offense.  That happened in *Shippley* only because the district court instructed the jury that drug type and quantity was an element of a § 846 offense.  But neither here nor in *Randolph* or *Pierce* did the juries make inconsistent findings on whether the Government proved the elements of a § 846 conspiracy.  The purported inconsistencies are between § 846 guilty verdicts and the separate question of whether the Government proved facts that would enhance penalties.  If those separate findings are somehow inconsistent, then Supreme Court precedent on inconsistent verdicts is squarely on point.

Finally, *Pierce* is instructive.  There, the verdict form asked (1) whether the defendant was guilty; (2) if guilty, whether it was "proven" or "not proven" that she conspired to possess with intent to distribute, or conspired to distribute, each controlled substance; and (3) if proven, the amount of each drug.  940 F.3d at 819-20.  The jury found the defendant guilty of a § 846 conspiracy but answered "not proven" as to each

drug.  *Id*.  Based on these answers, the district court granted the defendant's motion to set aside the verdict.  *Id*. at 821.  The Second Circuit affirmed, relying, as noted, on *Shippley*.  *Id*. at 824.  But the Second Circuit had this to say: "A wording that might have avoided the risk of inconsistency would have asked the jury to determine *the amounts of each narcotic only if the jurors unanimously concluded that the evidence provided a basis for determining such amounts*.  An inability to determine the amount as to any narcotic would not have resulted in a failure to find an element of the conspiracy offense."  940 F.3d at 823 n.8 (emphasis added).  The Court agrees, and that is precisely what happened here.  The jury was instructed: "if you find the Defendant guilty, you must also find whether the Government has proved beyond a reasonable doubt the weight of the controlled substances."  Doc. 255 at 8.

All of this is to say that *Shippley* cannot be read to reach beyond its unusual facts.  *Randolph* and *Pierce* overlooked *Shippley*'s note of caution and, like the district court in *Shippley*, mistakenly read the penalty provisions of § 841(b) to be essential elements of a § 846 offense, rather than elements that must be proved to enhance the penalty for a § 846 conviction.

In sum, Wilkerson's verdict is not inconsistent—the jury found the Government proved beyond a reasonable doubt that she conspired to possess with intent to distribute controlled substances but did not prove beyond a reasonable doubt that the Government proved facts that would have enhanced her penalty.  And even if the verdict was somehow inconsistent, this Court lacks the authority to invalidate the jury's finding of guilt.

### III. CONCLUSION

For the foregoing reasons, Wilkerson's Rule 29 motion is **DENIED**.  Her sentence shall be determined in accordance with § 841(b)(1)(C).

**SO ORDERED**, this 29th day of November, 2023.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT